122 So.2d 135

Martha DRANE et al.

v.

Willie Lee SMITH et al.

5 Div. 676.

Supreme Court of Alabama.

June 2, 1960.

Rehearing Denied July 14, 1960.

Harry D. Raymon, Tuskegee, for appellees.

W. C. Hare, Tuskegee, for appellants.

COLEMAN, Justice.

This is an appeal by three respondents from a final decree in equity in favor of appellees, complainants below. The bill of complaint purports to have been, and appellees say it was filed as a proceeding in rem under Title 7, § 1116 et seq., Code 1940, to establish title to certain lands in Macon County. The decree recites that appellants and some twenty-six other named persons "and all other heirs of Ida L. Smith * * * are hereby declared to have no right, title or interest in and to the said property heretofore set out."

The bill of complaint in the instant suit was filed March 8, 1956. Submission was on the pleadings, decree pro confesso, and "agreed statement of facts made in open Court by and between the Solicitor for the Complainants and the Solicitor representing the Respondents against whom a decree pro confesso was not entered * * * ." As we understand the record, appellants are those respondents against whom decree pro confesso was not entered. The agreed statement of facts recites in pertinent part as follows:

"Ida L. Smith and William M. Smith were residents of Macon County, Alabama, and they were husband and wife. Some years ago, property was acquired in the name of Ida L. Smith, and her name alone. Ida L. Smith died in 1937. At that time there was a mortgage to Home Owners' Loan Corporation made by Ida L. Smith, joined in by her husband William M. Smith, and this mortgage after her death was purchased by William M. Smith on May 1, 1939, and assigned and transferred to him; and subsequent to that, on November, 4, 1940, the mortgage was foreclosed at a regular foreclosure sale, and William M. Smith was the purchaser, and here in the foreclosure deed which we are introducing as a part of the record, which includes the actual description of the property involved, and it is recorded in Deed Book 34, at Page 94, in the Probate Office of Macon County, Alabama. Subsequent to that time William M. Smith lived on the property, sold part of it, and I don't think there was any question about his claiming it as his own. He died in 1952, and at at that time he left a will devising the property he had purchased at the foreclosure sale among his various relatives.

"Now the particular portion that we have brought action for at this time is the property that was devised to William Lee Smith, a nephew; his sister, Katie Morton and his niece, Lizzie Calhoun. That property is set out in the second paragraph of the will. It is agreed that the will has been duly probated and is recorded in the Probate Office of Macon County, Alabama. Here is a copy of the will on record, and here is a survey and a description of the property in question in this particular proceeding, that has been devised to these three people who are the complainants. We want to introduce as a part of the statement of the facts the file in the case of John Maddox vs Martha Drane and others involving a portion of the property.

"Now the question involved in this case is who is the owner of the property; whether or not the heirs of William M. Smith have acquired a good title through his purchase of the property through the foreclousre sale and the will, or whether the heirs of his deceased wife, who is the original owner of the property, acquired title by descent and distribution."

The file in the case of John Maddox v. Martha Drane, mentioned in the agreed statement of facts, is set out in the record. There was no appeal in that case. As we understand the record, that case involved title to certain other lands acquired by

William M. Smith by purchase at the same mortgage foreclosure sale through which he acquired the lands in the instant case. A party with notice of that prior suit would have notice of the foreclosure sale there involved which is the same sale with which we are here concerned. The record of the prior suit shows that appellants here were parties to the prior suit and appellants state in brief:

"The Complainant below, Appellees here, introduced in the record * * * the case of J. W. Maddox and Lucile B. Maddox vs Appellees here, together with numerous other Respondents, which case involved other property than that involved in this case now before the Court; which property had been conveyed by Wm. M. Smith to the said Maddox, and which was vacant property. Since the said referred to property had been conveyed by Wm. M. Smith to Maddox and had been paid for by Maddox, Respondents did not wish to interfere with the possession of Maddox and accordingly did not contest the action filed by Maddox. * * * "

We understand appellants thus to concede that in 1953 they had knowledge of the case of John Maddox v. Martha Drane and not merely notice but also knowledge of the foreclosure sale at which William M. Smith purchased the lands involved in the 1953 case together with the lands involved in the instant case.

The bill of complaint in the prior suit was filed April 9, 1953, and final decree was rendered July 6, 1953. This was well over two years prior to commencement of the instant suit March 8, 1956. We are not to be understood as holding that the 1953 case is or is not in any sense res adjudicata in the instant case, but the proceedings in that case do serve to show that appellants did have knowledge, not merely notice, of the adverse character of the possession of William M. Smith under the foreclosure sale. Apparently, the adverse character of Smith's possession after purchase at the foreclosure sale was conceded and stipulated in the agreed statement of facts which recites with reference to the foreclosure in 1940 as follows: "Subsequent to that time William M. Smith lived on the property, sold part of it, and *I don't think there was any question about his claiming it as his own.*" (Emphasis supplied.)

The facts shown by the record in this case are closely like the facts in Draper v. Sewell, 263 Ala. 250, 82 So.2d 303, and the principles there applied control here. In the Draper case, the husband was owner and together with his wife executed a mortgage. The husband died intestate and the wife became the life tenant. After the husband's death, the wife became assignee of the mortgage and transferred the mortgage to her daughter who foreclosed and became purchaser at the foreclosure sale in 1938. The daughter reserved the remainder in fee to herself and conveyed a life estate to the mother, wife of mortgagor. Some three or four years prior to the death of the mother which occurred January 9, 1954, certain heirs of the mortgagor acquired knowledge that the daughter claimed adversely to said heirs by reason of the foreclosure. On January 22, 1954, those heirs filed a bill of complaint claiming as tenants in common and seeking sale for division of the property conveyed by the mortgage. The trial court held that the daughter owned the property and that the heirs had no interest therein. On appeal, this court affirmed and said:

"* * * On the death of her husband, Mrs. Draper became a life tenant of the property. By her purchase of the Agee mortgage Mrs. Draper became the holder of an outstanding incumbrance on the property in addition to the life estate which she already possessed. * * *

* * * * * *

" 'The relation of the life tenant to reversioners or remaindermen has been held to be that of quasi trustee. If this quasi trustee purchases an outstanding mortgage or other incumbrance, the

purchase will be treated as having been made for "the joint benefit of himself and the reversioners or remaindermen." He will not be allowed to hold the mortgage or other incumbrance for his own exclusive benefit, if they are willing to contribute their cost of the acquisition, and do so within a reasonable time. * * *'

"Mrs. Draper, being the legal holder of the mortgage and the debt secured thereby, could make a valid transfer of same. This she did by means of an instrument dated November 13, 1937, * * *. By means of this instrument, the appellee became subrogated to the rights and interest of Mrs. Draper.

*   *   *   *   *   *

"* * * the purchase by the appellee at the foreclosure sale inured to the benefit of all the cotenants. In order to secure the benefit of said purchase, however, it was necessary for the appellants to make, or offer to make, their proportionate contribution to the purchase of the property within a reasonable time. * * *

"The term 'reasonable time', as applied to the period allowed one cotenant to contribute or offer to contribute his proportionate share of the cost of acquiring an outstanding claim against the property by another cotenant, has been given no fixed definition by our cases. In Savage v. Bradley, 149 Ala. 169, 43 So. 20, 123 Am.St.Rep. 30, it was observed:

" 'In view of the relation involved, we are not prepared to hold that any inexorable rule can or ought to be declared, since in the very nature of the relation the conduct and condition of the co-owners might materially change the standard. However, we are of the opinion, and so hold, that in ordinary cases, such as this is, by analogy to the term fixed for the exercise of the statutory right of redemption, two years is the limit of time within which election by a co-tenant should be made in order to avail himself of the redemptioner's act.'

*   *   *   *   *   *

"But the appellee contends, and the trial judge so found, that appellants had notice of the purchase and title claimed by appellee and that such notice was had after they became sui juris and some three or four years prior to the filing of the bill in this cause." 263 Ala. 250, 253, 254, 255, 256, 82 So.2d 303, 306.

In the instant case, the wife was owner and together with the husband executed a mortgage. The wife died intestate and the husband became the life tenant. Section 12, Title 16, Code 1940. The husband became assignee of the mortgage. He did not, as in the Draper case, transfer the mortgage to another, but foreclosed it himself and became the purchaser. No reason is suggested to justify a holding that he could not do so under the terms of the mortgage. As stated above, "He will not be allowed to hold the mortgage * * * for his own exclusive benefit" if the remaindermen come in and contribute within a reasonable time, but if the remaindermen do not so come in and offer to contribute and share the burden they cannot in good conscience retain the benefit.

" ' " * * * The cotenant asking a court of equity to award him the benefit of a purchase, must show reasonable diligence in making his election. Whatever delay he may have occasioned must be entirely consistent with perfect fair dealing on his part, and in no wise attributable to an effort to retain the advantage, while he shirks the responsibilities of the new acquisition." ' " 263 Ala. 255, 82 So.2d 308.

The foreclosure in the case at bar took place in 1940. As a result of the prior suit in 1953, appellants had knowledge of the foreclosure at least two years and eight months before commencement of the instant suit. The record does not show any offer on the part of appellants to contribute prior

to this suit. No excuse is shown by the record to justify the failure to offer to contribute, or to give appellants more time than the two years allowed a remainderman in ordinary cases "to avail himself of the redemptioner's act."

The result is that we are of opinion that the trial court correctly held that appellees were entitled to the relief granted as against appellants and that appellants have not shown that the decree appealed from is infected with error of which they are entitled to complain.

Affirmed.

LAWSON, STAKELY, GOODWIN and MERRILL, JJ., concur.